UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| ADAM JUDKINS<br><br>Plaintiff,<br><br>v.<br><br>CLARK COUNTY DETENTION CENTER,<br><br>Defendant. | Case No. 2:22-cv-00878-APG-EJY<br><br>**ORDER and**<br><br>**REPORT AND RECOMMENDATION** |

This matter comes before the Court on Plaintiff's Complaint and application to proceed *in forma pauperis*. ECF Nos. 8, 8-1. Plaintiff's application to proceed *in forma pauperis* is complete and is granted.

**I.    SCREENING THE COMPLAINT**

Upon granting a request to proceed *in forma pauperis*, a court must screen the complaint under 28 U.S.C. § 1915(e)(2). Under the Prison Litigation Reform Act, a federal court must dismiss a prisoner's claim if the action "is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief." *Id.* However, *pro se* pleadings must be liberally construed. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

The standard for dismissing a complaint for failure to state a claim upon which relief can be granted is established by Federal Rule of Civil Procedure 12(b)(6). The court applies the same standard under § 1915 when reviewing the adequacy of a complaint or an amended complaint. When a court dismisses a complaint under § 1915(e), the plaintiff should be given leave to amend the complaint with directions to cure its deficiencies unless it is clear from the face of the complaint that the deficiencies cannot be cured by amendment. *Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995).

Review under Rule 12(b)(6) is essentially a ruling on a question of law. *Chappel v. Lab. Corp. of America*, 232 F.3d 719, 723 (9th Cir. 2000). Dismissal for failure to state a claim is proper

only if it is clear that the plaintiff cannot prove any set of facts in support of the claim that would entitle him or her to relief. *Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999). In making this determination, the court takes as true all allegations of material fact stated in the complaint, and the court construes them in the light most favorable to the plaintiff. *Warshaw v. Xoma Corp.*, 74 F.3d 955, 957 (9th Cir. 1996). Allegations of a pro se complainant are held to less stringent standards than formal pleadings drafted by lawyers. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980). While the standard under Rule 12(b)(6) does not require detailed factual allegations, a plaintiff must provide more than mere labels and conclusions. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A formulaic recitation of the elements of a cause of action is insufficient. *Id.*

Additionally, a reviewing court should "begin by identifying pleadings [allegations] that, because they are no more than [mere] conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported with factual allegations." *Id.* "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "Determining whether a complaint states a plausible claim for relief … [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

Finally, all or part of a complaint filed by a prisoner may therefore be dismissed sua sponte if the prisoner's claims lack an arguable basis either in law or in fact. This includes claims based on legal conclusions that are untenable (e.g., claims against defendants who are immune from suit or claims of infringement of a legal interest which clearly does not exist), as well as claims based on fanciful factual allegations (e.g., fantastic or delusional scenarios). *Neitzke v. Williams*, 490 U.S. 319, 327-28 (1989); *see also McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

II.   **DISCUSSION**

   A.   <u>Background Facts</u>.

Plaintiff alleges that on February 11, 2022, he was pulled over for a traffic stop by Officer Jaessen (sometimes "Jaessen") of the Las Vegas Metropolitan Police Department ("LVMPD"). ECF No. 8-1 at 2. Plaintiff says that during the stop Jaessen claimed Plaintiff's truck was an unregistered

vehicle operating on a Las Vegas roadway. *Id.* Plaintiff contends the vehicle was a blue Chevy Cobalt registered in Idaho, but Jaessen claimed the vehicle was black and unregistered in any state. *Id.* After Plaintiff provided Officer Jaessen with identification, Jaessen arrested him stating there was a warrant for Plaintiff's arrest out of Colorado. *Id.* Plaintiff avers that no such warrant existed. *Id.* Plaintiff alleges he was then transported to and held at Clark County Detention Center ("CCDC") without a warrant or criminal charges. *Id.* at 3.

Plaintiff was booked into CCDC by LVMPD Officer Farina ("Farina"). *Id.* at 5. Plaintiff alleges Farina lost his driver's license, phone, laptop, and $500 in cash. *Id.* Plaintiff contends he was erroneously told by LVMPD officers that his wallet and other property were with the rest of his personal property at CCDC. *Id.* Plaintiff alleges another LVMPD officer signed off on Plaintiff's property outside of his presence and the property has not been seen since. *Id.* Also, while Plaintiff was being held, Plaintiff says Officer Martin ("Martin") tried to obtain a buccal swab from him. *Id.* at 3. Plaintiff states he told the officers he would refuse a buccal swab unless a warrant was produced. *Id.* Plaintiff alleges he was never shown a warrant and officers kicked at his cell door at all hours of the day until Plaintiff finally consented to the buccal swab. *Id.* Plaintiff filed a grievance regarding the swab. *Id.* at 4.

In March 2022, Plaintiff alleges Sergeant Batu (sometimes "Batu") came to Plaintiff's cell to discuss Plaintiff's complaint about the buccal swab as well as Plaintiff's complaint regarding the seizure of his truck and other personal property. *Id.* Plaintiff avers that during this conversation, Batu became irritated with him and ordered Plaintiff be placed in "the hole" for discipline. *Id.* While in the hole, Plaintiff contends Batu and three unnamed officers strip searched Plaintiff. *Id.* Batu then turned off his body camera, asked the other three officers to leave, and proceeded to grab Plaintiff inappropriately and smack him from behind while grabbing his own genitals and yelling at Plaintiff. *Id.* Plaintiff also accuses Batu of slapping Plaintiff's back, pushing Plaintiff into a wall, and pushing Plaintiff down onto a bench. *Id.* In April 2022, Sergeant Kelly (sometimes "Kelly") of the LVMPD ordered all male inmates from Plaintiff's ward to get into the shower with one other male correctional officer and two female medical staff members. *Id.* Plaintiff contends the inmates were then asked to expose their genitals under threat of punishment. *Id.*

3

From the time Plaintiff was booked into CCDC on February 11, 2022 until April 18, 2022, Plaintiff states he did not make an appearance before a court. *Id.* at 5. Plaintiff alleges Farina wanted him to sign a waiver for extradition without a judge present. *Id.* Plaintiff contends he was held and not allowed bond until May 3, 2022 when Farina served him with what Plaintiff describes as a copy of a governor's warrant. *Id.* Plaintiff claims Farina failed to follow proper procedures regarding use of a warrant and reading of Plaintiff's rights. *Id.* Plaintiff also alleges Farina falsified a new booking slip on April 27, 2022. *Id.* In addition to these assertions, Plaintiff states that during his incarceration he did not eat because he was not fed his Kosher diet and his bibles and personal legal documents were taken during "shakedowns." *Id.*

Plaintiff asserts the LVMPD and CCDC violated his constitutional rights. ECF No. 8-1 at 1. Plaintiff says he was subject to excessive force at the hands of Batu. *Id.* at 4. Plaintiff argues Jaessen made a false arrest in violation of his Fourth Amendment right to be free of unwarranted searches and seizures. *Id.* at 2. Plaintiff accuses Officer Finley ("Finley:") of violating NRS 179.197 by threatening Plaintiff in order to prompt him to sign a waiver for extradition without a judge present resulting in false imprisonment in violation of his Fourth Amendment rights. *Id.* at 5. Plaintiff makes a *Monell* claim against the LVMPD for failure to train. *Id.* at. 6. Plaintiff contends his Sixth Amendment rights were violated because he was not appointed counsel. *Id.* at 3. Plaintiff argues this deprivation constitutes a violation of Nevada law as well. *Id.* Plaintiff asserts he was denied religious services and a religious diet in violation of his First Amendment rights to the free exercise of his religion. *Id.* at 4. Plaintiff points to the buccal swab performed by Martin as a violation of his Fourth Amendment rights because it was taken without a warrant. *Id.* at 3. Plaintiff claims he was unlawfully strip searched by Kelly in violation of his Fourth Amendment rights. *Id.* at 4. Plaintiff contends he was denied his rights to medical care. *Id.* at 5. Plaintiff claims he was subjected to Intentional Infliction of Emotional Distress (IIED). *Id.* at 6. Plaintiff says Batu's and Kelly's actions violated the Prison Rape Elimination Act (the "PREA"). *Id.* at 4. Finally, Plaintiff argues his property was illegally taken by Farina. *Id.* at 5.

As a result of the above Plaintiff requests: (1) replacement or compensation for his 2008 Chevy Cobalt truck and the property within it; (2) the destruction of the DNA obtained from his

buccal swab; (3) nominal damages for the two alleged sexual assaults; (4) actual damages; (5) mental and emotional distress damages; (6) punitive damages; and (7) relief under *Monell* for failure to train. *Id.* at 6.

B.  Plaintiff's Excessive Force Claim Against Batu May Proceed.

Inmates who are not yet convicted may sue prison officials for injuries suffered while in custody under the Fourteenth Amendment Due Process Clause. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979); *Kinsley v. Hendrickson*, 576 U.S. 389, 397-398 (2015) (the Due Process Clause protects a pretrial detainee from the use of force that amounts to punishment) (internal citation omitted). While such punishment may consist of actions taken with an expressed intent to punish, proof of intent to punish is not required for a pretrial detainee to prevail on a due process claim. *See id.* at 398. A pretrial detainee must provide "objective evidence that the challenged governmental action is not rationally related to a legitimate government objective or that it is excessive in relation to purpose." *Id.* (internal citation omitted).

Plaintiff alleges Batu sent him "to the hole" for discipline following Plaintiff's grievances. ECF No. 8-1 at 7. Following a strip search, Plaintiff alleges Batu grabbed Plaintiff inappropriately, smacked him from behind, and grabbed his own genitals while yelling at Plaintiff. *Id.* Batu is alleged to have pushed Plaintiff into the wall and then down onto a bench during the encounter. *Id.* A sexual assault on an inmate by a guard is always "deeply offensive to human dignity" and is completely void of penological justification. *See Schwenk v. Hartford*, 204 F.3d. 1187, 1197 (9th Cir. 2000); *Wood v. Beauclair*, 692 F.3d 1041, 1051 (9th Cir. 2012). Thus, Sergeant Batu's actions were excessive in relation to any possible legitimate government objective. The Court finds Plaintiff alleges sufficient facts to state a Fourteenth Amendment Due Process claim against Batu.

C.  The Court Recommends Plaintiff's Fourth Amendment False Arrest and False Imprisonment Claims Against Jaessen and Finley be Dismissed with Prejudice.

Plaintiff asserts two Fourth Amendment claims. First, he contends his arrest by Jaessen was without probable cause resulting in his incarceration and eventual extradition. ECF. No. 8-1 at 2, 5. Second, Plaintiff claims false imprisonment against Finley in violation of NRS 179.197. *Id.* at 5.

To assert a false arrest claim under the Fourth Amendment, Plaintiff "must plead facts that would show … [Defendant] ordered or otherwise procured the arrests and the arrests were without probable cause." *Lacey v. Maricopa County*, 693 F.3d 896, 918 (9th Cir. 2012); *see also Cabrera v. City of Huntington Park*, 159 F.3d 374, 380 (9th Cir. 1998). "Probable cause exists when, under the totality of the circumstances known to the arresting officers (or within the knowledge of other officers at the scene), a prudent person would believe that the suspect committed a crime." *March v. Twin Cities Police Auth.*, Case No. C 14-00512 SI, 2014 WL 3725931, at *4 (N.D. Cal. July 25, 2014) (citation omitted).

"[W]hen a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Heck v. Humphrey*, 512 U.S. 477 (1994); *see Daughtery v. Wilson*, Case No. 08cv0408-WQH (BLM), 2010 WL 2605815, at *7 (S.D. Cal. Apr. 14, 2010) (holding "Plaintiff's claims that Defendants committed perjury, falsified police reports, and fabricated evidence necessarily imply the invalidity of his convictions" and are necessarily barred by *Heck*.). *Heck* bars claims for "[w]rongful arrest, malicious prosecution, and a conspiracy" when the allegation "could not have occurred unless … [a plaintiff was] innocent of the crimes for which he was convicted." *See Guerrero v. Gates*, 442 F.3d 697, 703 (9th Cir. 2006).

Plaintiff maintains there was no warrant for his arrest. ECF No. 8-1 at 2. Plaintiff says he appeared in court on April 18, 2022, and then remained incarcerated. *Id*. at 5. Plaintiff alleges he was served a false copy of a warrant for his arrest on May 3, 2022. The Court notes a subsequent document filed by Plaintiff shows he was extradited to Colorado on stalking, harassment, and retaliation charges. *Id*.; ECF No. 12. Plaintiff states he was extradited "specifically for retaliation … via governor's warrant" and a preliminary hearing was scheduled in Colorado. ECF No. 12 at 2.

The facts before the Court demonstrate there was probable cause for Plaintiff's arrest. *See Moreno v. Baca*, Case No. CV 00-07149 ABC CWX, 2001 WL 1204113, at *3 (C.D. Cal. Jul. 9, 2001) ("a determination of probable cause sufficient to bind a criminal defendant over for trial made

at a preliminary hearing may estop the defendant from later seeking damages under Section 1983 by alleging his arrest was not supported by probable cause.") *citing Haupt v. Dillard*, 17 F.3d 285, 288-90 (9th Cir. 1994); *Flores v. City of Bakersfield*, Case No. 1:17-cv-1393-JLT, 2019 WL 7038385 at *30 (E.D. Cal. Dec. 20, 2019) ("Even where the plaintiff was acquitted in the criminal trial," there would have been no trial but for a probable cause determination.). Based on Plaintiff's allegations, the Court finds Plaintiff fails to state a Fourth Amendment violation based on an arrest unsupported by probable cause and that amendment would be futile. The Court recommends Plaintiff's false arrest claim against Jaessen be dismissed with prejudice.

Plaintiff alleges the false imprisonment claim against Finley arises from a violation of NRS 179.197. The pertinent part of this statute states: "No person arrested upon such warrant shall be delivered over to the agent whom the executive authority demanding the person has appointed to receive the person unless the person is first taken forthwith before a judge of a court of record in this state, who shall inform the person of the demand made for surrender and of the crime with which the person is charged, and that the person has the right to demand and procure legal counsel." Thus, Plaintiff appears to be alleging he was held in violation of his right to be brought before a judge for an initial appearance. Plaintiff's claim fails because a writ of habeas corpus is the exclusive remedy for a state prisoner who challenges the fact or duration of his confinement. *Heck*, 512 U.S. at 481 (1994), *citing Preiser v. Rodriguez*, 411 U.S. 475, 488-490 (1973). The Court finds Plaintiff cannot obtain this relief in a suit brought under § 1983. Plaintiff's requested relief must be brought through an application for a writ of habeas corpus. The Court recommends Plaintiff's Fourth Amendment claim against Finely be dismissed with prejudice, as amendment is futile.

    D. <u>The Court Recommends Plaintiff's *Monell* Claim Be Dismissed without Prejudice but with Leave to Amend.</u>

To state a claim under 42 U.S.C. § 1983 against the LVMPD, Plaintiff must allege a constitutional violation arising out of an official department policy, practice, or custom. *Monell v. Department of Social Services of N.Y.*, 436 U.S. 658, 690 (1978); *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138-39 (9th Cir. 2012); *Clouthier v. County. of Contra Costa*, 591 F.3d 1232, 1249 (9th Cir. 2010). "First, a local government may be held liable 'when implementation of its official

policies or established customs inflicts the constitutional injury.""" *Clouthier*, 591 F.3d at 1249 (quoting *Monell*, 436 U.S. at 708 (Powell, J. concurring)). "Second, under certain circumstances, a local government may be held liable under § 1983 for acts of 'omission,' when such omissions amount to the local government's own official policy." *Id.* "Third, a local government may be held liable under § 1983 when 'the individual who committed the constitutional tort was an official with final policy-making authority' or such an official 'ratified a subordinate's unconstitutional decision or action and the basis for it.'" *Id.* at 1250 (quoting *Gillette v. Delmore*, 979 F.2d 1342, 1346-47 (9th Cir. 1992)).

A single act by a non-policy making official does not show the existence of a policy, custom, or practice. *Rivera v. County of Los Angeles*, 745 F.3d 384, 389 (9th Cir. 2014). A municipal defendant may not be sued solely because an injury was inflicted by one of its employees or agents. *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006). "Only if a plaintiff shows that his injury resulted from a permanent and well settled practice may liability attach for injury resulting from a local government custom." *McDade v. West*, 223 F.3d 1135, 1141 (9th Cir. 2000) (internal citation and quote marks omitted). The *Iqbal/Twombly* pleading standard applies to *Monell* claims. *AE ex rel. Hernandez v. County of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012).

Here, Plaintiff's claim against LVMPD does not allege any policy or custom that resulted in harm to Plaintiff. While LVMPD is named as a defendant, and *Monell* is mentioned under request for relief, Plaintiff does not plead any facts demonstrating there was an official policy, custom, or practice in place that involved the violation of any constitutional right. Plaintiff also does not allege that any custom or policy is responsible for Plaintiff's alleged injuries. The Court recommends dismissing Plaintiff's claim against LVMPD without prejudice but with leave to amend.

E.    Plaintiff's Right to Counsel Claim Must be Brought in a Habeas Petition.

Plaintiff contends he was never appointed counsel "as [his] Sixth Amendment right" guarantees. ECF. No 8-1 at 3. "The Sixth Amendment guarantees the accused, at least after the initiation of formal charges, the right to rely on counsel as a medium between him and the State." *Maine v. Moulton*, 474 U.S. 159, 176 (1985) (internal quote marks omitted). The Sixth Amendment Right does not attach until "at or after the initiation of adversary judicial criminal proceedings—

whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." *See McNeill v. Wisconsin*, 501 U.S. 171, 175 (1991); *U.S. v. Charley*, 396 F.3d 1074, 1082 (9th Cir. 2005) (internal citation and quotation marks omitted). When a Sixth Amendment failure amounts to an attack on a § 1983 Plaintiff's imprisonment, that claim is one that effectively attacks the Plaintiff's fact or duration of imprisonment. Such a claim, mut be brought through a habeas petition, not a § 1983 claim. *Davis v. Thurston County*, Case No. 11-5583 RJB, 2012 WL 37516 at *8 (W.D. Wash. Jan. 9, 2012) *citing Heck*, 512 U.S. 477; *Preiser*, 411 U.S. 475. Here, Plaintiff brings a claim of an alleged failure to appoint counsel, resulting in an unlawful imprisonment. For this reason, the Court recommends Plaintiff's Sixth Amendment claim alleging the failure to appoint counsel be dismissed with prejudice and Plaintiff be directed to file a habeas petition.

   F.  <u>Plaintiff's First Amendment Claim</u>.

   Incarcerated inmates retain their First Amendment rights to free exercise of religion. *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 348 (1987). To warrant protection under the First Amendment, a religious belief must be sincerely held, and the claim must be rooted in religious belief. *Malik v. Brown,* 16 F.3d 330, 333 (9th Cir.1994). The claimant need not be a member of a particular organized religious denomination to demonstrate a sincerely held belief. *Frazee v. Ill. Dep't of Emp't Sec.,* 489 U.S. 829, 834 (1989). Protected beliefs are not limited to those that are shared by all members of a religious community. *Callahan v. Woods,* 658 F.2d 679, 686 (9th Cir. 1981).

   Allegations that prison officials refuse to provide a healthy diet conforming to sincere religious beliefs states a cognizable claim under § 1983 for denial of the First Amendment right to free exercise of one's religious practices and beliefs. *McElyea v. Babbitt*, 833 F.2d 196, 197–98 (9th Cir. 1987); *see also Ward v. Walsh*, 1 F.3d 873, 876–77 (9th Cir. 1993) (Jewish inmate claiming denial of Kosher diet). Plaintiff is not required to show that consuming a Kosher diet is mandated as part of his religion; rather he is required to show that he sincerely believes eating the requested Kosher diet is consistent with his faith. *See Shakur v. Schriro*, 514 F.3d 878, 884–885; *see also Malik,* 16 F.3d at 333 (explaining the correct free exercise test is whether a belief is sincerely held).

"In general, a plaintiff will have stated a free exercise claim if (1) the claimant's proffered belief [is] sincerely held; and (2) the claim [is] rooted in religious belief, not purely secular philosophical concerns." *Walker v. Beard*, 789 F.3d 1125, 1138 (9th Cir. 2015) (internal citation omitted).

Here, Plaintiff alleges he was not fed a Kosher diet on numerous occasions and he starved as a result. ECF. No 8-1 at 5. Plaintiff also asserts that his bibles were taken during "shakedowns." *Id.* Plaintiff's allegations do not demonstrate his proffered beliefs are sincerely held or how his claims were rooted in religious beliefs. The facts as stated are also insufficient to show that a Kosher diet was consistent with Plaintiff's faith. Plaintiff also alleges no facts demonstrating that Defendants substantially burdened the practice of his religion by preventing him from eating his requested diet or by preventing access to his bibles. *See Shakur*, 514 F.3d at 884-885. Plaintiff's conclusory statements are insufficient to state a First Amendment Free Exercise claim. Thus, the Court recommends Plaintiff's First Amendment claim be dismissed without prejudice and with leave to amend.

G.  Plaintiff's Fourth Amendment Claim Against Officer Martin.

"The Fourth Amendment, binding on the States by the Fourteenth Amendment, provides that the right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated." *Maryland v. King*, 569 U.S. 435, 446 (2013) (internal quote marks omitted). "It can be agreed that using a buccal swab on the inner tissues of a person's cheek in order to obtain DNA samples is a search." *Id.* However, "when officers make an arrest supported by probable cause to hold for a serious offense and they bring the suspect to the station to be detained in custody, taking and analyzing a cheek swab of the arrestee's DNA is, like fingerprinting and photographing, a legitimate police booking procedure that is reasonable under the Fourth Amendment." *Id.* at 465–466. However, if the DNA swab was not taken as a routine booking process, then there is a violation of the Fourth Amendment. *See Brown v. Conrado*, Case No. CV 13-2620-PSJ PJW, 2014 WL 772803, at *3 (C.D. Cal. Feb. 21, 2014).

NRS 176.09123(1) provides that "if a person is arrested for a felony pursuant to a warrant, the law enforcement agency making the arrest shall … upon booking a person into a city or county jail or detention facility, and before the person is released from custody obtain a biological specimen

from the person, through a cheek swab … and submit the biological specimen to the appropriate forensic laboratory for genetic marker analysis." If a person is arrested for a felony without a warrant, NRS 176.09123(2) requires the same collection of biological specimens through a cheek swab upon booking and before the person is released from custody. The statute states that "the law enforcement agency making the arrest shall … submit the biological specimen to the appropriate forensic laboratory for genetic marker analysis in accordance with the provisions of this section after receiving notice that a court or magistrate has determined that probable cause existed for the person's arrest; and if a court or magistrate determines that probable cause did not exist for the person's arrest, destroy the biological specimen within five business days after receiving notice of the determination by the court or magistrate." NRS 176.09123(2)(a), (c)-(d). So long as a DNA swab is taken from an arrestee or prisoner during the routine booking process as detailed in NRS 176.09123, and the provided protocol is followed, there is no Fourth Amendment violation. *See King*, 569 U.S. at 446.

Plaintiff does not identify when he was first asked to provide a buccal swab, but rather alleges that Officer Martin came to him for the swab on numerous occasions. ECF No. 8-1 at 3. Without facts identifying the timing of the request, Plaintiff does not plead an essential fact upon which this Fourth Amendment claim may lie. While Plaintiff also states that no warrant existed for the sample sought, Plaintiff says he told Martin and other officers he would comply with a DNA swab if the officers presented a warrant signed by a judge. *Id.* It is unclear whether Plaintiff wanted to see a warrant for his arrest or for the buccal swab. Based on the foregoing, the Court finds Plaintiff's allegations are insufficient to state a Fourth Amendment claim against Officer Martin and, therefore, recommends Plaintiff's claim be dismissed without prejudice and with leave to amend.

H.   <u>Plaintiff's Fourth Amendment Claim Against Sergeant Kelly</u>.

Plaintiff appears to allege the strip search conducted by Sergeant Kelly was a violation under the Fourth Amendment. In evaluating the reasonableness of the facility's policies regarding strip searches, courts consider (1) the scope of the particular intrusion, (2) the manner in which it is conducted, (3) the justification for initiating it, and (4) the place in which it is conducted. *Bell v. Wolfish*, 441 U.S. 520, 559 (1979). Undoubtedly, strip searches are a considerable violation of one's personal dignity. *See Michenfelder v. Sumner*, 860 F.2d 328, 222 (9th Cir. 1988). However, even

assuming that alternative measures could achieve the same results without strip searches a policy need not involve the least intrusive means to be reasonable under *Bell*. *See id.* at 334 n.3 (noting that the least intrusive means for Fourth Amendment challenges brought by inmates has been rejected). Plaintiff alleges Kelly made roughly seventy-five men from a specific ward get into the shower to conduct what appears to be a strip search. ECF No. 8-1 at 4. Plaintiff contends that the men were asked to show one male commanding officer and two female medical staff their genitals under threat of discipline. *Id.* Based on these facts, the scope and manner of the strip search appears to be visual only.

"[T]he Prisoner bears the burden of showing that prison officials intentionally used exaggerated or excessive means to enforce security." *Thompson v. Souza*, 111 F.3d 694, 700 (9th Cir. 1997) (internal citation omitted). The Court finds Plaintiff's allegation do not meet this standard. Plaintiff also does not allege sufficient facts to determine whether there was justification for initiating the search, nor does he contend that the location of the search was inappropriate. For these reasons, Plaintiff's allegation against Kelly fails to establish a violation of the Fourth Amendment. Plaintiff should be granted leave to amend this claim.

      I.      <u>Plaintiff's Claim Regarding Medical Care</u>.

Claims asserting violations of the right to adequate medical care brought by a pretrial detainee under the Fourteenth Amendment are evaluated under an objective deliberate indifference standard. *Gordon v. County of Orange*, 888 F.3d 1118, 1124–1125 (9th Cir. 2018) (internal citation and quotation marks omitted). To state such a claim, the plaintiff must plead: (1) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (2) those conditions put the plaintiff at substantial risk of suffering serious harm; (3) the defendant did not take reasonable available measures to abate that risk even though a reasonable official in the circumstances would have appreciated the risk involved, thus making the consequences of the defendant's conduct obvious, and (4) by not taking such measures, the defendant caused the plaintiff's injuries. *Id.*

Plaintiff does not plead any facts to support his Fourteenth Amendment medical claim. Plaintiff provides no facts establishing an intentional decision was made that put him at substantial

risk of suffering serious harm or that an unnamed defendant did not take reasonable available measures to abate the risk which caused his injuries. For this reason, the Court recommends Plaintiff's medical care claim be dismissed without prejudice and with leave to amend.

  J.  Plaintiff's Intentional Infliction of Emotional Distress Claim.

To state a claim for IIED, a plaintiff must establish: "(1) extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress, (2) the plaintiff's having suffered severe or extreme emotional distress, and (3) actual or proximate causation." *Dillard Dep't Stores, Inc. v. Beckwith*, 989 P.2d 882, 886 (Nev. 1999) (internal citation and quotation marks omitted). Extreme and outrageous conduct is conduct that falls outside all possible bounds of decency and is regarded as intolerable in modern civil society. *Maduike v. Agency Rent-A-Car*, 114 Nev. 1, 953 P.2d 24 (1998). This prong is measured by the finder of fact on a sliding scale: the more extreme the conduct, the lesser need to require evidence of physical injury or illness resulting from the conduct. *Nelson v. City of Las Vegas*, 99 Nev. 548, 555 (1983). Additionally, "[b]oth intentional and negligent infliction of emotional distress claims requi[r]e allegations of severe emotional distress." *Amie v. Kraft-Sussman Funeral Serv., Inc.*, Case No. 2:18-cv-02131-GMN-VCF, 2018 WL 6272889, at *2 (D. Nev. Nov. 30, 2018) (internal citations omitted).

Here, Plaintiff briefly mentions IIED under his request for relief, but fails to identify a defendant in connection with this claim, fails to identify what conduct he relies upon to state the claim, and does not plead facts alleging severe or extreme emotional distress. The Court finds Plaintiff's IIED claim is capable of amendment sufficient to survive screening and, therefore, recommends the IIED claims be dismissed without prejudice but with leave to amend.

  J.  The Court Recommends the Following Claims be Dismissed with Prejudice.
    1.  Plaintiff's Section 1983 Claims Against CCDC.

Plaintiff cannot state a claim under 42 U.S.C. § 1983 against CCDC. The statute "authorizes suits against a person only, and the CCDC is an inanimate building." *Mkhitaryan v. Las Vegas Metropolitan Police Department*, Case No. 2:20-cv-2169-JAD-NJK, 2021 WL 6622257, at *2 (D. Nev. July 21, 2021). The Court recommends Plaintiff's § 1983 claim against CCDC be dismissed with prejudice because the claim is futile.

2.      *Claims Seeking Monetary Damages Against LVMPD Officers in their Official Capacities.*

Plaintiff names six LVMPD officers as Defendants and does not specify whether the claims are against the officers in their official or individual capacities. ECF No. 8-1 at 2–5. The Eleventh Amendment "bars actions against state officers sued in their official capacities for past alleged misconduct involving a complainant's federally protected rights, where the nature of the relief sought is retroactive, *i.e.*, money damages, rather than prospective, *e.g.*, an injunction." *Bair v. Krug*, 853 F.2d 672, 675 (9th Cir. 1988) (internal citations omitted). Thus, any claims for money damages against the LVMPD officers in their official capacities fail as a matter of law. The Court recommends dismissing with prejudice all of Plaintiff's claims seeking money damages for past harms allegedly caused by the LVMPD officers in their official capacities.

3.      *Plaintiff's PREA Claims Against Sergeants Batu and Kelly.*

Congress enacted the PREA to address the problem of prison rape by creating a commission to study the issue and recommend national standards to prevent, detect, and respond to prison rape.. *Hatcher v. Harrington*, Case No. 14-00554 JMS/KSC, 2015 WL 474313, at * 4 (D. Haw. Feb. 5, 2015) (internal citations omitted). "Nothing in the PREA explicitly or implicitly suggests that Congress intended to create a private right of action for inmates to sue prison officials for noncompliance with the act. *Id.* (internal citations omitted). Because the PREA does not provide a private cause of action, the Court recommends Plaintiff's PREA claims against Sergeants Batu and Kelly be dismissed.

**III.   ORDER**

IT IS HEREBY ORDERED that Plaintiff's application to proceed *in forma pauperis* (ECF No. 8) is GRANTED.

IT IS FURTHER ORDERED that Plaintiff's Fourteenth Amendment Due Process claim against Sergeant Batu may proceed.

**IV.    RECOMMENDATION**

IT IS HEREBY RECOMMENDED that the following claims asserted by Plaintiff be dismissed with prejudice:

1. Fourth Amendment false arrest and false imprisonment claims against Officers Jaessen and Finley
2. Sixth Amendment right to Counsel claim;
3. Section 1983 claim against Clark County Detention Center;
4. All claims against LVMPD officers in their official capacities; and
5. Prison Rape Elimination Act claims against Sergeants Batu and Sergeant Kelly.

IT IS FURTHER RECOMMENDED that the following claims asserted by Plaintiff be dismissed without prejudice and with leave to amend because, although Plaintiff currently fails to state these claims with sufficient facts to establish relief that may be granted, Plaintiff may be able to amend his Complaint to do so:

1. *Monell* claim against the LVMPD;
2. First Amendment Free Exercise claim;
3. Fourth Amendment claim against Officer Martin;
4. Fourth Amendment claim against Sergeant Kelly;
5. Fourteenth Amendment claim for right to medical care; and
6. Intentional Infliction of Emotional Distress claim.

IT IS FURTHER RECOMMENDED that Plaintiff be given through and including **May 31, 2023** to file an amended complaint. Plaintiff is advised that if he chooses to file an amended complaint it must be complete in and of itself. This means all facts supporting all claims **must** be contained in the amended complaint. The Court cannot look back to Plaintiff's original Complaint for any purposes because, upon filing the amended complaint, Plaintiff's original Complaint is nullified. If Plaintiff does not file an amended complaint on or before **May 31, 2023**, it is recommended the case proceed on claims identified in the Order above.

DATED this 24th day of April, 2023.

ELAYNA J. YOUCHAH
UNITED STATES MAGISTRATE JUDGE

15

**NOTICE**

Under Local Rule IB 3-2, any objection to this Finding and Recommendation must be in writing and filed with the Clerk of the Court within fourteen (14) days. The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985). This circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court"s order and/or appeal factual issues from the order of the District Court. *Martinez v. Ylst,* 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).